UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No.:

LASHA HARRELL,                                   )
                                                 )
            Plaintiff,                           )
                                                 )
v.                                               )
                                                 )
PALM BEACH COUNTY SHERIFF'S                      )
OFFICE, RIC L. BRADSHAW, in his                  )
official capacity as the Sheriff of Palm Beach   )
County, Florida,                                 )
            Defendant.                            )
_____

## COMPLAINT

Plaintiff, Lasha Harrell, (the "Plaintiff"), by and through the undersigned counsel, hereby

files this complaint and sues Defendant Palm Beach County Sheriff's Office, Ric L. Bradshaw, in

his official capacity as the Sheriff of Palm Beach County, Florida ("Defendant" or "PBSO"), and

states as follows:

## NATURE OF THE ACTION

This is a civil action for damages, declaratory relief, injunctive relief, and all other

appropriate remedies arising from Defendant's unlawful employment practices in violation of

federal and Florida law. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e et seq., the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01 et

seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq.

Plaintiff seeks redress for Defendant's discriminatory and retaliatory conduct, including

disparate treatment based on race and sex, denial of training and promotional opportunities, hostile

work environment, and retaliation for engaging in protected activity when she repeatedly reported

discriminatory treatment and unequal working conditions. Defendant's actions, including denying

1

Plaintiff career-advancing training, subjecting her to unfavorable post assignments, excluding her from workplace opportunities, and interfering with and retaliating against her for exercising her rights under the FMLA, constitute unlawful discrimination and retaliation under federal and state law.

Plaintiff seeks all relief available under Title VII, the FCRA, and the FMLA, including back pay, front pay or reinstatement, compensatory damages, emotional distress damages, declaratory and injunctive relief, restoration of lost benefits, prejudgment interest, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## PARTIES

1. At all times material, Plaintiff, Lasha Harrell, is an adult female and a resident of Palm Beach County, Florida.

2. At all times material, Plaintiff was employed by the Palm Beach County Sheriff's Office as a Deputy Sheriff in the Corrections Security Bureau, assigned to the West Detention Center in Belle Glade, Florida.

3. At all times material, Plaintiff was a "person," "aggrieved person," and "employee" as those terms are defined under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f), the Florida Civil Rights Act, Fla. Stat. § 760.02, the Family and Medical Leave Act, 29 U.S.C. § 2611, and the Age Discrimination in Employment Act, 29 U.S.C. § 630.

4. At all times material, Plaintiff was a member of multiple protected classes based on race (Black/African American), sex (female), and age (over forty years old) as protected under Title VII, the Florida Civil Rights Act, and the Age Discrimination in Employment Act.

5. Defendant Palm Beach County Sheriff's Office is a political subdivision of the State of Florida, operating under Sheriff Ric L. Bradshaw, and is a "person" and an "employer" within

2

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

the meaning of Title VII, 42 U.S.C. § 2000e(b), the Florida Civil Rights Act, Fla. Stat. § 760.02, the Family and Medical Leave Act, 29 U.S.C. § 2611, and the Age Discrimination in Employment Act, 29 U.S.C. § 630.

6.     At all times pertinent hereto, Defendant was engaged in an industry affecting commerce and employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

7.     At all times pertinent hereto, Defendant had the authority to hire, terminate, promote, demote, and otherwise set the terms and conditions of Plaintiff's employment.

8.     Defendant's principal office is located at 3228 Gun Club Road, West Palm Beach, Florida 33406.

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343(3)-(4), as this action arises under the laws of the United States prohibiting discrimination in employment, including Title VII of the Civil Rights Act of 1964 and the Family and Medical Leave Act.

10.     This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims under the Florida Civil Rights Act share all common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the unlawful employment practices occurred in Palm Beach County, Florida, which lies within the Southern

District of Florida, the Defendant conducts business and maintains operations in this District, and the Defendant maintains Plaintiff's employment records here.

## CONDITIONS PRECEDENT

12.   The Plaintiff has complied with all conditions precedent, to wit:

   a.   Plaintiff timely filed Charge of Discrimination No. 510-2024-10992 with the Equal Employment Opportunity Commission, Miami District Office, on March 10, 2025;

   b.   The charge was dual-filed with the Florida Commission on Human Relations under Fla. Stat. § 760.10;

   c.   Because Defendant is a public-sector employer, the EEOC transferred the matter to the U.S. Department of Justice;

   d.   The Department of Justice issued a Notice of Right to Sue, dated February 5, 2026;

   e.   This Complaint is timely filed within ninety (90) days of Plaintiff's receipt of that Notice;

   f.   No administrative filing is required for Plaintiff's Family and Medical Leave Act claims.

13.   All other applicable conditions precedent have occurred, been performed, or been excused.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

14.   Plaintiff Lasha Harrell is a Black female, and therefore is a member of protected groups based on her race and sex.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

15.     Plaintiff was hired by Defendant Palm Beach County Sheriff's Office on June 27, 2011, as a Deputy Sheriff in the Corrections Security Bureau. Throughout her employment spanning more than fourteen years, Plaintiff has performed her job well and in a satisfactory manner, and she has been commended by peers and respected by the inmate population alike.

16.     Plaintiff remains employed with Defendant, has maintained near-perfect attendance throughout her employment, and has never used the sick call line in her more than fourteen years of service with PBSO. The sole absence from work was a period of FMLA-protected leave taken in 2023 following a fractured ankle, as described further below.

17.     Plaintiff's job duties include maintaining institutional safety and order, conducting routine security checks, supervising inmate movement and behavior, enforcing correctional protocols, and serving as a liaison with medical and program staff.

18.     Plaintiff worked out of the West Detention Center ("WDC") in Belle Glade, Florida, a high-capacity correctional facility housing inmates across all custody levels (minimum, medium, and maximum security) on the B-Shift (7:40 a.m. to 4:00 p.m.).

19.     From August 2020 until approximately June 23, 2025, Plaintiff's immediate supervisor was Sergeant Michael Barmore (#6715), a White male.

20.     Throughout her tenure, Plaintiff demonstrated strong work performance and commitment to the Sheriff's Office.

21.     The origins of this discriminatory pattern trace to Plaintiff's prior assignment at the Intake Department. Due to ongoing bullying and harassment, Plaintiff was transferred to the West Detention Center in Belle Glade, a transfer Plaintiff welcomed as a fresh start. Unfortunately, the harassment and bullying contined at Belle Glade, where there was a command structure that

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

tolerated and emboldened the continued harassment of Plaintiff, which has persisted throughout Plaintiff's time at Belle Glade.

22.     Particularly beginning in 2020, Plaintiff was subjected to severe and pervasive harassment based on her race and sex.

23.     Plaintiff's admirable job performance included her instrumental leadership in producing more than 4,000 inmate masks during the COVID-19 pandemic in April 2020, for which she received a commendatory letter from David M. Eberhart Jr. to Captain Cardaropoli. Despite Plaintiff's central role in that initiative, she was deliberately excluded from the recognition interview and video celebrating the project, receiving no public acknowledgment of her contributions whatsoever.

24.     Despite her exemplary job performance, Plaintiff was not treated the same as deputies outside her protected classes.

25.     In October 2020, Plaintiff was assigned to the D-4 dormitory, a high-risk post that supervisors themselves acknowledged housed inmates who had threatened violence and were believed to possess shanks, as the first deputy assigned to that dormitory in the new rotation, with only intermittent support from other deputies conducting periodic security checks rather than consistent on-post relief. On November 1, 2020, when Plaintiff expressed similar health concerns and objected to the quarantine assignment, Sergeant Carter, a Black male, overrode an accommodation Sergeant Bryant, a Black female, had already granted, and forced Plaintiff into the D-2 quarantine dormitory, notwithstanding that the deputy regularly assigned to that area was available and able to cover the post.

26.     In addition to the disparate job assignments, on October 29, 2020, Deputy Sales, a Black male deputy, verbally abused Plaintiff in dormitory D-4 in front of Lieutenant Bailey, a

6

Black male, and inmates, stating "fuck that bitch" and "pussy ass hoe." Plaintiff immediately reported this incident to Lieutenant Bailey and Sergeant Bryant. No meaningful corrective action was taken against Deputy Sales.

27.    Plaintiff was humiliated by Sales' actions. After the incident, an elderly Hispanic inmate approached Plaintiff and confirmed that deputies had been using these gendered epithets about Plaintiff in front of inmates.

28.    In November 2020, Plaintiff submitted a formal complaint to Captain Jones, a Black male, in the form of a detailed memorandum to Captain Jones titled "PLEASE LOOK INTO THIS MATTER," regarding the discriminatory post assignments, the disparity in quarantine assignments, and the verbal assault by Deputy Sales that had gone without corrective action. From this point forward, Plaintiff filed additional formal complaints of harassment, including sexual harassment, through internal channels. Plaintiff's protected activities continued through the years and she the discriminatory, retaliatory and harassing conduct toward her escalated.

29.    Over the years, it became evident to Plaintiff that as a Black woman, she was being subjected to discrimination arising from the intersection of her race and sex, subjecting her to treatment distinct from that experienced by Black male deputies or White female deputies.

30.    Continuing through the present, Plaintiff has been subjected to systematic discrimination based on her race and sex, including denial of training opportunities, discriminatory work assignments, a hostile work environment, and escalating retaliation after she complained about the discriminatory treatment.

31.    Beginning in 2024, Plaintiff made multiple requests to attend the Field Training Officer ("FTO") course, a career-advancing training that would have qualified her for Career 3 status and an annual salary increase of five to ten percent.

a)       On June 13, 2024, Plaintiff emailed Sergeant Barmore requesting placement in the August FTO class; he directed her to submit a travel tracker request.

b)       On September 11, 2024, Plaintiff again requested placement, and on September 18, 2024, Lieutenant Burroughs (#7341), a Black female, instructed her to submit a Travel Training Request Form when the next class became available. Plaintiff complied.

c)       On October 24, 2024, Plaintiff submitted Travel Training Request ID 156947 for the FTO course scheduled for December 16–20, 2024, which was formally denied. Even when Lieutenant Burroughs approved Plaintiff for training opportunities, the approval was rescinded by Captain William Ramos, a Hispanic male, without explanation. Plaintiff has been denied each FTO request she submitted.

32.     During this same time frame, particularly from July 2024 to March 2025, individuals with similar tenure to Plaintiff, such as Lindsley J. Denis (Black Male, seniority date July 27, 2012), were given the opportunity to become an FTO, but Plaintiff was not. To worsen matters, individuals with less tenure than Plaintiff, such as Leroy Battles III (Male, seniority date July 27, 2019), Cordarryl J. Mckay (Male, seniority date January 27, 2019), and Everardo Ortiz Jr. (Male, seniority date April 27, 2018) were given the opportunity to become an FTO, while Plaintiff was not.

33.     In April 2024, Plaintiff had also submitted requests, IDs 51980 and 52012, for the Instructor Techniques course, which were respectively never processed (ID 51980) and denied (ID 52012).

8
THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

34.     In May 2024, Plaintiff applied for another Training Program scheduled for May 6-24, 2024. Although Lieutenant Burroughs initially verbally approved Plaintiff's participation, Captain William Ramos subsequently denied the request without explanation. Newer male deputies with less experience and seniority were approved for this training.

35.     Plaintiff also applied multiple times over a two-year period for Lobby Security training and assignment. Although supervisors assured Plaintiff she would be added to the training list, she was later removed without explanation. When Plaintiff did receive what was represented as Lobby Security training, the individual assigned to train her was not an official Field Training Corporal, lacked the qualifications to conduct the training, and declined to provide Plaintiff with the system passwords and access credentials necessary to perform the lobby assignment. Plaintiff immediately reported in writing that she had not received proper training and requested assignment to a qualified Corporal trainer. Her request was denied and ignored. Male deputies with less seniority completed the training through proper channels and obtained the assignment. Notably, after Plaintiff formally documented that her assigned "trainer" held no Corporal designation, Defendant promoted that individual to Corporal, retroactively papering over the deficiency of the training Plaintiff received while still failing to provide her proper training or the Lobby Security assignment.

36.     Plaintiff's repeated requests for career-advancing training were ignored or denied, while similarly situated deputies, outside of her protected classes, with less experience and seniority were routinely approved for the same opportunities. Plaintiff complained of this disparate treatment in the denial of her training requests, but Defendant took no corrective action. To date, PBSO has not offered any legitimate explanation for denying Plaintiff these opportunities.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

37.     In addition to denying Plaintiff career-advancing training, Defendant subjected Plaintiff to discriminatory work assignments and post manipulation.

38.     From about year 2024, Plaintiff requested reassignment to administrative roles, including utility and administrative assignments, community outreach, and volunteer engagement positions. These requests were denied or ignored. Comparable, male and non-Black employees, were granted special assignments without difficulty, while Plaintiff was forced to remain in the most physically demanding and undesirable assignments.

39.     Beginning in 2024, Plaintiff was repeatedly "bumped" from her preferred or established posts. Initially, this occurred no more than three times per week, but the frequency increased to approximately fifty percent of the time during certain periods.

40.     Throughout her employment, Plaintiff was routinely assigned to the most dangerous and undesirable dormitories in the facility, including D-4, which housed gang members and where shanks had been discovered; D-2, a quarantine unit during the COVID-19 pandemic; and E-1, which had unaddressed maintenance deficiencies, including a broken mop wringer that remained unfixed despite Plaintiff's reports to Sergeant Barmore beginning in September 2024.

41.     In early 2025, Plaintiff was assigned without advance notice to a dormitory housing inmate Little Mac Williams (Echo One dormitory), an inmate who had recently committed a homicide and was known to be volatile. The assignment was directed by Lieutenant Robbie Castillo, a White female, and Sergeant Bennett Bryant, despite Plaintiff having had no recent assignment to that dormitory and despite the obvious dangers the assignment presented. This incident is illustrative of Defendant's pattern of assigning Plaintiff to dangerous posts without adequate preparation, warning, or support

42.     In contrast to the treatment of Plaintiff, male deputies were routinely assigned to preferred posts and were permitted to decline undesirable assignments without penalty.

43.     On August 15, 2024, Plaintiff escalated her concerns about discriminatory post assignments directly to Captains Kinsey and Ramos, stating that requesting a meeting was her "only option for fairness" after prior complaints to supervisors went unresolved. Plaintiff never received the requested meeting. Rather than address her concerns, supervisors spread a false narrative throughout the facility attributing changes to overtime post procedures to Plaintiff, causing her to be falsely blamed and ostracized by coworkers throughout the facility.

44.     In or around October 2024, during mandatory team-building training, Sergeant Michael Barmore, a White male, and Lieutenant Robbie Castillo, segregated Black and White employees into separate rooms, creating a racially hostile environment that reinforced racial division within the workplace.

45.     Beginning in July 2024, the escalating hostile and discriminatory work environment compelled Plaintiff to curtail the overtime shifts she had previously relied upon, substantially reducing her earnings. On October 2, 2024, Plaintiff formally documented this ongoing harm by submitting a memorandum titled "POST FAIRNESS" to multiple supervisors, complaining that overtime signup rules were being manipulated and that she was being placed in posts under inequitable circumstances. Plaintiff wrote that she had to "look over [her] shoulder and [was being] set up for failure daily" despite loving her job and performing it well. Defendant took no corrective action.

46.     In the October 2, 2024, memorandum, Plaintiff also documented the broken mop ringer in dormitory E-1 that had been sitting in the staff bathroom since September 10, 2024, with a rod missing. When Plaintiff brought this safety issue to Sergeant Barmore's attention, he told

11

Plaintiff to write an updated memo rather than addressing the problem. Again, nothing was done to end the discriminatory, retaliatory and harassing treatment Plaintiff was subjected to.

47.     Following a November 8, 2024, retaliatory incident, Plaintiff exhausted Defendant's internal complaint process. On or about November 14, 2024, she filed a written complaint with Labor Relations Division Manager Angela Hall, identifying herself as a Black female with seniority and documenting the discrimination and hostile work environment she had endured. Two days later, on or about November 16, 2024, Internal Affairs received her complaint, assigned it case number IR24-412, and interviewed Plaintiff under oath on or about November 17, 2024.

48.     The process was not fair and/or unbiased because the Defendant investigated itself. Sergeant Ryan Reza, a member of the same command structure Plaintiff complained about, conducted the investigation. On January 9, 2025, Internal Affairs suspiciously concluded there was "no evidence" to support Plaintiff's allegations, and on January 21, 2025, Captain Andrew Richter (#7925) closed the case with a disposition of "No Action." Plaintiff was given a ten-day ultimatum to produce additional evidence or face closure, an impossible burden given that the decision-makers were Plaintiff's own superiors.

49.     On January 30, 2025, Plaintiff wrote to Sergeant Reza and Internal Affairs to document the continuing retaliation and flag the fundamental conflict of interest in the investigation, stating that it was "impossible to find my superiors guilty of my complaint". Defendant took no further action. Plaintiff thereafter filed a Charge of Discrimination with the EEOC on March 10, 2025.

50.     On March 10, 2025, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (Charge No. 510-2024-10992), which was dual-filed with

the Florida Commission on Human Relations. The charge alleged race discrimination, sex discrimination, hostile work environment, and retaliation.

51.     As of late 2025 and early 2026, Plaintiff has been assigned to Delta One (D1), which Plaintiff describes as the most dangerous dormitory in the facility, where inmate Erick Jean Louis has been selling drugs and causing overdoses.

52.     Following Plaintiff's formal complaints to Internal Affairs, Labor Relations, and the EEOC, the retaliation against Plaintiff escalated significantly. After Plaintiff's complaints, supervisors and coworkers began ignoring Plaintiff, refusing to acknowledge her, and falsely blaming her for workplace issues. Coworkers who had supported Plaintiff were pressured to distance themselves, resulting in professional and social isolation.

53.     In addition to the race and sex discrimination described above, Plaintiff suffered retaliation as a direct result of her protected activity in seeking and exercising her rights under the Family and Medical Leave Act. In March 2023, Plaintiff suffered a fractured ankle and took FMLA leave certified by orthopedic specialist Dr. Brian Coleman, who confirmed her incapacity from March 24 through May 8, 2023, with restrictions prohibiting standing, lifting, or weight-bearing on her right foot. Defendant's Benefits Division acknowledged the leave, and Plaintiff attended physical therapy two to three times per week during her recovery. Rather than honoring Plaintiff's FMLA rights, Defendant used her protected leave against her in evaluating her for promotions and assignments. On September 30, 2025, a supervisor with authority over promotions confirmed this directly, telling Plaintiff: "if you actually take FMLA leave, as opposed to coming to work, thinking it will protect your job, it only protects your job but it works against you for promotions." This statement constitutes direct evidence that Defendant willfully penalized Plaintiff for exercising her federally protected right to medical leave, conduct that is independently actionable

and further demonstrates the broader pattern of retaliatory treatment Plaintiff has endured throughout her employment.

54.     As a direct and proximate result of Defendant's discriminatory, retaliatory, and unlawful conduct, Plaintiff has suffered substantial economic damages. In addition to economic damages, Plaintiff has suffered severe emotional distress, anxiety, fear, humiliation, and damage to her professional reputation. The workplace stress caused by Defendant's discriminatory and retaliatory conduct became so severe that Plaintiff required emergency room treatment for chest pains attributed to workplace stress. Plaintiff has experienced sleep disturbance, emotional exhaustion, and strained personal relationships as a result of Defendant's unlawful conduct.

55.     Throughout the relevant time period, Plaintiff received less favorable treatment than similarly situated employees outside her protected classes. Male deputies and non-Black deputies with less seniority and experience were approved for training opportunities that were denied to Plaintiff, were assigned to preferred posts, were permitted to decline undesirable assignments without penalty, and were not subjected to the same pattern of bumping and reassignment that Plaintiff experienced.

56.     Defendant's actions, including systematically denying Plaintiff career-advancing training, subjecting her to discriminatory work assignments, creating and permitting a hostile work environment, retaliating against her for engaging in protected activity, and interfering with and retaliating against her for exercising her FMLA rights, were intentional, willful, and in violation of federal and state law.

### COUNT I: SEX DISCRIMINATION (DISPARATE TREATMENT) - TITLE VII

57.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 11, and 14 through 56 above as if set out in full herein.

14

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

58.     Plaintiff is female and, therefore, is a member of a protected class under Title VII.

59.     Plaintiff was qualified for her position and for the training, assignments, and advancement opportunities she sought.

60.     Defendant subjected Plaintiff to adverse employment actions because of her sex, including but not limited to:

a)      Denying Plaintiff career-advancing training opportunities, including FTO certification and other specialized training opportunities, while approving male deputies with less seniority and experience;

b)      Subjecting Plaintiff to discriminatory work assignments, repeated "bumping" from preferred posts, and assignment to dangerous or undesirable dormitories while male deputies received more favorable assignments;

c)      Tolerating gender-based harassment directed toward Plaintiff, including Deputy Sales referring to Plaintiff using gendered obscenities in front of inmates and supervisors without meaningful corrective action; and

d)      Excluding Plaintiff from workplace and community engagement opportunities afforded to male employees.

61.     Similarly situated male employees were treated more favorably than Plaintiff under materially similar circumstances.

62.     Defendant's stated reasons for its treatment of Plaintiff were false, pretextual, and inconsistently applied.

63.     Plaintiff's sex was a motivating factor in Defendant's adverse treatment of Plaintiff.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

64.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered damages, including emotional distress, humiliation, mental anguish, loss of professional opportunities, and economic damages.

65.     Defendant acted intentionally and with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a. Issue an order enjoining the Defendants to cease and desist from the conduct described in Count I of this Complaint and from discriminating against Plaintiff in any manner whatsoever.

b. Issue an order requiring the Defendants to take steps to protect Plaintiff and other similarly situated employees from the type of conduct described in Count I of this Complaint, and from all other forms of discrimination in the future.

c. Issue an order requiring the Defendants to adopt and disseminate a policy protecting employees from discrimination in the workplace and establishing reasonable and adequate procedures for investigating complaints of sex discrimination and taking suitable remedial action.

d. Order reinstatement of the Plaintiff to the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to sex discrimination, or award Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e. Award the Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if Plaintiff had not been subjected to sex discrimination.

f. Award the Plaintiff compensatory damages for her emotional suffering.

g. Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C. § 2000e-5(k).

h. Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

## COUNT II: SEX DISCRIMINATION - (RETALIATION) TITLE VII

66.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 11, and 14 through 56 as though fully set forth herein.

67.     Plaintiff engaged in protected activity under Title VII by repeatedly complaining about sex discrimination, disparate treatment, harassment, and unequal working conditions to supervisors, Labor Relations, Internal Affairs, and the Equal Employment Opportunity Commission.

68.     Following Plaintiff's protected complaints, Defendant subjected Plaintiff to materially adverse actions, including intensified "bumping" from preferred posts, assignment to dangerous and undesirable dormitories, increased scrutiny, exclusion from workplace communications and opportunities, public undermining by supervisors, and escalating professional and social isolation. For example, after Plaintiff submitted her October 2, 2024 "POST FAIRNESS" memorandum and later filed formal complaints with Labor Relations and Internal Affairs in November 2024, supervisors increased Plaintiff's undesirable assignments, manipulated her schedule, publicly blamed her for workplace issues, and permitted coworkers to ostracize her. Following Plaintiff's EEOC Charge filed on March 10, 2025, the retaliatory conduct continued and intensified.

69.     The temporal proximity between Plaintiff's protected activity and Defendant's adverse actions supports a causal connection between the two.

70.     Defendant's stated reasons for its treatment of Plaintiff were false, pretextual, and intended to conceal unlawful retaliation.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

71.     Defendant retaliated against Plaintiff because she opposed discriminatory practices and engaged in activity protected under Title VII.

72.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered emotional distress, humiliation, mental anguish, loss of professional opportunities, economic damages, and physical manifestations of stress.

73.     Defendant acted intentionally and with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

a.  Issue an order enjoining the Defendants to cease and desist from the conduct described in Count II of this Complaint and from retaliating against the Plaintiff in any manner whatsoever.

b.  Issue an order requiring the Defendants to take steps to protect the Plaintiff and other similarly situated employees from the type of conduct described in Count II of this Complaint, and from all other forms of retaliation in the future.

c.  Issue an order requiring the Defendants to adopt and disseminate a policy protecting employees from retaliation in the workplace and establishing reasonable and adequate procedures for investigating complaints of retaliation and taking suitable remedial action.

d.  Order reinstatement of the Plaintiff in the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to retaliation, or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e.  Award the Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if the Plaintiff had not been subjected to retaliation.

f.  Award the Plaintiff compensatory damages for her emotional suffering.

g.  Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C. § 2000e-5(k).

h.  Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

## COUNT III: RACE DISCRIMINATION
## (DISPARATE TREATMENT) - TITLE VII

74.     The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 11, and 14 through 56 above as if set out in full herein.

75.     Plaintiff is a Black, African American female and, as such, is a member of a class protected under Title VII from discrimination on the basis of race.

76.     Plaintiff was qualified for her position and for the training, assignments, and advancement opportunities she sought. Plaintiff had more than fourteen (14) years of experience with Defendant and consistently performed her duties satisfactorily.

77.     Defendant subjected Plaintiff to adverse employment actions because of her race, including denial of career-advancing training opportunities, discriminatory work assignments, repeated reassignment to dangerous and undesirable dormitories, exclusion from workplace opportunities, and unequal treatment compared to similarly situated non-Black employees.

78.     For example, Plaintiff repeatedly requested Field Training Officer ("FTO") certification and other specialized training opportunities during 2024, but her requests were denied while male and non-Black deputies with less seniority and experience were approved for the same opportunities. Plaintiff was also repeatedly "bumped" from preferred assignments and assigned to dangerous dormitories, including D-4, D-2 quarantine units, E-1, and Delta One, while similarly situated non-Black employees received more favorable treatment. In or around October 2024, supervisors segregated Black and White employees into separate rooms during mandatory workplace training, further reinforcing the racially hostile environment Plaintiff experienced.

79.     Similarly situated non-Black employees were treated more favorably than Plaintiff under materially similar circumstances.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

80.     Defendant's stated reasons for its treatment of Plaintiff were false, pretextual, inconsistently applied, and intended to conceal unlawful race discrimination.

81.     Plaintiff's race was a motivating factor in Defendant's decisions to deny Plaintiff equal terms, conditions, privileges, and opportunities of employment.

82.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered emotional distress, humiliation, mental anguish, loss of professional opportunities, economic damages, and damage to her professional reputation.

83.     Defendant acted intentionally and with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court:

a.  Issue an order enjoining the Defendants to cease and desist from the conduct described in Count III of this Complaint and from discriminating against Plaintiff in any manner whatsoever.

b.  Issue an order requiring the Defendants to take steps to protect Plaintiff and other similarly situated employees from the type of conduct described in Count III of this Complaint, and from all other forms of discrimination in the future.

c.  Issue an order requiring the Defendants to adopt and disseminate a policy protecting employees from discrimination in the workplace and establishing reasonable and adequate procedures for investigating complaints of race discrimination and taking suitable remedial action.

d.  Order reinstatement of the Plaintiff to the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to race discrimination, or award Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e.  Award the Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if Plaintiff had not been subjected to race discrimination.

f.  Award the Plaintiff compensatory damages for her emotional suffering.

g.  Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C. § 2000e-5(k).

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

h.  Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT IV: RACE DISCRIMINATION - (RETALIATION) Title VII

84.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 11, and 14 through 56 above as if set out in full herein.

85.    Plaintiff is a Black, African American female and, as such, is a member of a class protected under Title VII from discrimination and retaliation on the basis of race.

86.    Plaintiff engaged in protected activity under Title VII by repeatedly complaining about race discrimination, disparate treatment, hostile working conditions, and retaliation to supervisors, Labor Relations, Internal Affairs, and the Equal Employment Opportunity Commission.

87.    Following Plaintiff's protected complaints, Defendant subjected Plaintiff to materially adverse actions, including intensified scrutiny, repeated "bumping" from preferred assignments, assignment to dangerous and undesirable dormitories, exclusion from workplace communications and opportunities, public undermining by supervisors, and escalating professional and social isolation. For example, after Plaintiff submitted her October 2, 2024 "POST FAIRNESS" memorandum and later filed formal complaints with Labor Relations and Internal Affairs in November 2024, Plaintiff experienced increased reassignment to undesirable posts, manipulation of her schedule, exclusion from workplace communications, and retaliatory hostility from supervisors and coworkers. Following Plaintiff's EEOC Charge filed on March 10, 2025, the retaliatory conduct continued and intensified, including the removal of Plaintiff's supportive supervisor from his supervisory role.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

88.     The temporal proximity between Plaintiff's protected activity and Defendant's adverse actions supports a causal connection between the two.

89.     Defendant's stated reasons for its treatment of Plaintiff were false, pretextual, inconsistently applied, and intended to conceal unlawful retaliation.

90.     Defendant retaliated against Plaintiff because she opposed race discrimination and engaged in activity protected under Title VII.

91.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered emotional distress, humiliation, mental anguish, damage to her professional reputation, loss of overtime opportunities and earnings, and other economic damages.

92.     Defendant acted intentionally and with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a. Issue an order enjoining the Defendant to cease and desist from the conduct described in Count IV of this Complaint and from retaliating against the Plaintiff in any manner whatsoever.

b. Issue an order requiring the Defendant to take steps to protect the Plaintiff and other similarly situated employees from the type of conduct described in Count IV of this Complaint, and from all other forms of retaliation in the future.

c. Issue an order requiring the Defendant to adopt and disseminate a policy protecting employees from retaliation in the workplace and establishing reasonable and adequate procedures for investigating complaints of race discrimination and taking suitable remedial action.

d. Order reinstatement of the Plaintiff in the position she would occupy and with all the benefits she would have if she had not suffered adverse employment action attributable to race discrimination or award the Plaintiff front pay in an amount to be determined at trial if reinstatement is determined at trial to be impractical.

e. Award the Plaintiff back pay, including overtime pay, pension benefits, and other employment benefits which would have accrued if the Plaintiff's employment had not been terminated.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

f. Award the Plaintiff compensatory damages for her emotional suffering.

g. Award the Plaintiff attorneys' fees, including expert witness fees, pursuant to 42 U.S.C.A. § 2000e-5(k).

h. Award the Plaintiff costs, interest, and such other relief as this Court may deem proper.

## COUNT V: HOSTILE WORK ENVIRONMENT
## BASED ON THE INTERSECTION OF RACE AND SEX - TITLE VII

93. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 11, and 14 through 56 above as if set out in full herein.

94. Plaintiff is a Black/African American female and, therefore, is a member of protected classes under Title VII. Plaintiff brings this claim based upon the intersection of her race and sex as a Black woman.

95. Beginning in or around 2020 and continuing throughout the relevant period, Defendant, through its supervisors, command staff, and employees, subjected Plaintiff to severe and pervasive harassment and hostility based upon the intersection of her race and sex. The hostile conduct included discriminatory work assignments, repeated reassignment to dangerous and undesirable dormitories, denial of career-advancing training opportunities, exclusion from workplace activities and opportunities, retaliatory scrutiny following complaints, social ostracization, public humiliation, and tolerated verbal abuse. Plaintiff was also subjected to race-based segregation during mandatory workplace training and gender-based verbal abuse in front of inmates and supervisors without meaningful corrective action. The conduct collectively created an objectively and subjectively hostile work environment directed at Plaintiff as a Black woman.

96. Plaintiff did not welcome the conduct described herein and repeatedly reported the harassment and discriminatory treatment through written complaints, memoranda, Internal Affairs complaints, Labor Relations complaints, and her EEOC Charge.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

97.    Plaintiff was subjected to the hostile work environment because of the intersection of her race and sex. The treatment Plaintiff experienced differed from that experienced by Black male employees and White female employees and was directed specifically toward Plaintiff as a Black woman.

98.    The harassment was severe and pervasive and unreasonably interfered with Plaintiff's work performance and psychological well-being.

99.    The conduct complained of would have adversely affected the psychological well-being and work performance of a reasonable person in Plaintiff's position.

100.    Defendant knew or should have known of the harassment and hostile work environment because Plaintiff repeatedly complained to supervisory personnel, Internal Affairs, Labor Relations, and the EEOC beginning in or around 2020 and continuing throughout the relevant period.

101.    Despite receiving actual and constructive notice of the hostile work environment, Defendant failed to take prompt or adequate remedial action.

102.    Instead of correcting the discriminatory conduct, Defendant permitted the harassment to continue and escalate after Plaintiff complained.

103.    As a direct and proximate result of Defendant's hostile work environment and discriminatory conduct, Plaintiff suffered emotional distress, humiliation, mental anguish, damage to her professional reputation, loss of overtime earnings and advancement opportunities, and other compensatory damages.

104.    Defendant acted intentionally and with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

a.  Issue an order enjoining Defendant from engaging in the discriminatory, retaliatory, and harassing conduct described herein and from otherwise discriminating, retaliating, or harassing Plaintiff on the basis of race, sex, and the intersection thereof;

b.  Issue an order requiring Defendant to take immediate and effective steps to protect Plaintiff and other similarly situated employees from race- and sex-based harassment, discrimination, retaliation, and hostile work environments in the future;

c.  Issue an order requiring Defendant to adopt, implement, and disseminate policies and procedures designed to prevent and promptly remedy workplace discrimination, retaliation, and harassment based on race, sex, and the intersection thereof, including adequate complaint investigation procedures and remedial measures;

d.  Order reinstatement of Plaintiff to the position she would have occupied absent Defendant's unlawful conduct, together with all salary, seniority, overtime opportunities, benefits, and other employment rights and privileges, or alternatively award front pay and other equitable relief should reinstatement be impracticable;

e.  Award Plaintiff back pay, lost overtime compensation, lost benefits, pension benefits, and all other compensation and employment benefits lost as a result of Defendant's unlawful conduct;

f.  Award Plaintiff compensatory damages for emotional distress, humiliation, mental anguish, and damage to her professional reputation;

g.  Award Plaintiff attorneys' fees, litigation expenses, expert witness fees, and costs pursuant to 42 U.S.C. § 2000e-5(k) and all other applicable provisions of law; and

h.  Award Plaintiff prejudgment interest, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## COUNT VI: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981
### (Enforced Through 42 U.S.C. § 1983 and Monell Liability)

105.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 56 above as though fully set forth herein.

106.    Plaintiff is a Black/African American female and, at all times material, was entitled to the protections afforded by 42 U.S.C. § 1981, including the right to enjoy the same benefits, privileges, terms, and conditions of employment as White employees.

25

107.    Defendant, acting under color of state law through its policymakers, supervisors, command staff, and employees, intentionally discriminated against Plaintiff on the basis of race in violation of 42 U.S.C. § 1981.

108.    Plaintiff was qualified for her position and for the training, assignments, and advancement opportunities she sought. Despite Plaintiff's qualifications and more than fourteen years of service, Defendant denied Plaintiff equal access to career-advancing opportunities, subjected Plaintiff to discriminatory and dangerous work assignments, repeatedly displaced Plaintiff from preferred posts, and treated similarly situated non-Black employees more favorably.

109.    For example, Plaintiff repeatedly requested Field Training Officer ("FTO") certification and other specialized training opportunities during 2024, but her requests were denied while non-Black and male deputies with less seniority and experience were approved for the same opportunities. Plaintiff was also repeatedly assigned to dangerous and undesirable dormitories, including D-4, D-2 quarantine units, E-1, and Delta One, while similarly situated non-Black employees were afforded more favorable assignments and accommodations. In addition, during mandatory workplace training, supervisors segregated Black and White employees into separate rooms, reinforcing the racially discriminatory environment Plaintiff experienced.

110.    The discriminatory conduct described herein was undertaken pursuant to Defendant's policies, customs, practices, and/or deliberate indifference to race discrimination within the Corrections Security Bureau and West Detention Center.

111.    Defendant, through its policymakers and command staff, maintained and permitted customs and practices that denied Black employees equal access to training, advancement opportunities, favorable assignments, and workplace protections routinely afforded to non-Black employees.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

112. Defendant had actual and constructive notice of the discriminatory conduct through Plaintiff's repeated complaints to supervisors, Labor Relations, Internal Affairs, and the EEOC, yet failed to take prompt or effective remedial action.

113. Defendant's failure to adequately investigate, supervise, discipline, and correct the discriminatory conduct of its supervisory personnel constituted deliberate indifference to Plaintiff's federally protected rights.

114. Defendant's policies, customs, practices, and deliberate indifference were the moving force behind the deprivation of Plaintiff's rights under 42 U.S.C. §§ 1981 and 1983.

115. Defendant's conduct was intentional, willful, malicious, and carried out with reckless disregard for Plaintiff's federally protected rights.

116. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered loss of earnings, loss of advancement opportunities, emotional distress, humiliation, mental anguish, damage to her professional reputation, and other compensatory damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against Defendant on this Count;

b. Declare that Defendant's conduct violated Plaintiff's rights under 42 U.S.C. §§ 1981 and 1983;

c. Enjoin Defendant from engaging in the discriminatory practices described herein and require Defendant to implement lawful, non-discriminatory policies and practices regarding assignments, training, promotions, and workplace investigations;

d. Award Plaintiff back pay, lost overtime compensation, lost benefits, and all other lost compensation resulting from Defendant's unlawful conduct;

e. Award Plaintiff front pay, equitable relief, and/or reinstatement to the position and status Plaintiff would have occupied absent Defendant's unlawful conduct;

f. Award Plaintiff compensatory damages for emotional distress, humiliation, mental anguish, and damage to her professional reputation;

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

g.  Award Plaintiff attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988;

h.  Award pre-judgment and post-judgment interest; and

i.  Grant such other and further legal and equitable relief as this Court deems just and proper.

### COUNT VII: RETALIATION IN VIOLATION OF 42 U.S.C. § 1981-Enforced Through 42 U.S.C. § 1983 — Monell Liability

117.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 56 above as though fully set forth herein.

118.  Plaintiff is a Black/African American female and, at all times material, engaged in activity protected under 42 U.S.C. § 1981 by repeatedly opposing and reporting race discrimination, racially hostile working conditions, and disparate treatment in the workplace.

119.  Defendant, acting under color of state law through its policymakers, supervisors, command staff, and employees, retaliated against Plaintiff because she opposed race discrimination and engaged in protected activity.

120.  Plaintiff repeatedly complained about discriminatory treatment to supervisors, Labor Relations, Internal Affairs, and the Equal Employment Opportunity Commission, including formal complaints submitted in November 2020, August 2024, October 2024, November 2024, January 2025, and March 2025.

121.  Following Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including intensified scrutiny, repeated reassignment to dangerous and undesirable posts, exclusion from workplace communications and opportunities, schedule manipulation, public humiliation, and escalating professional and social isolation. For example, after Plaintiff submitted her October 2, 2024 "POST FAIRNESS" memorandum and later filed complaints with Labor Relations and Internal Affairs, Plaintiff experienced increased "bumping"

28

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

from preferred assignments, retaliatory reassignment to undesirable dormitories, exclusion from workplace communications, and public undermining by supervisors. Following Plaintiff's EEOC Charge filed on March 10, 2025, the retaliatory conduct continued and intensified.

122.    The adverse actions taken against Plaintiff were causally connected to her protected activity. The temporal proximity between Plaintiff's complaints and the escalating retaliatory conduct supports a strong inference of retaliatory motive.

123.    The retaliatory conduct described herein was undertaken pursuant to Defendant's policies, customs, practices, and/or deliberate indifference to retaliation against employees who oppose race discrimination.

124.    Defendant had actual and constructive notice of the retaliatory conduct through Plaintiff's repeated complaints and failed to take prompt or effective remedial action.

125.    Defendant's failure to adequately investigate, supervise, discipline, and correct the retaliatory conduct of its supervisory personnel constituted deliberate indifference to Plaintiff's federally protected rights.

126.    Defendant's policies, customs, practices, and deliberate indifference were the moving force behind the deprivation of Plaintiff's rights under 42 U.S.C. §§ 1981 and 1983.

127.    Defendant's conduct was intentional, willful, malicious, and carried out with reckless disregard for Plaintiff's federally protected rights.

128.    As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered loss of overtime earnings, loss of advancement opportunities, emotional distress, humiliation, mental anguish, damage to her professional reputation, and other compensatory damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

a.  Enter judgment in favor of Plaintiff and against Defendant on this Count;

b.  Declare that Defendant's conduct violated Plaintiff's rights under 42 U.S.C. §§ 1981 and 1983;

c.  Enjoin Defendant from engaging in the retaliatory practices described herein and require Defendant to implement lawful anti-retaliation policies, practices, and complaint procedures;

d.  Award Plaintiff back pay, lost overtime compensation, lost benefits, and all other lost compensation resulting from Defendant's unlawful conduct;

e.  Award Plaintiff front pay, equitable relief, and/or reinstatement to the position and status Plaintiff would have occupied absent Defendant's unlawful conduct;

f.  Award Plaintiff compensatory damages for emotional distress, humiliation, mental anguish, and damage to her professional reputation;

g.  Award Plaintiff attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988;

h.  Award pre-judgment and post-judgment interest; and

i.  Grant such other and further legal and equitable relief as this Court deems just and proper.

## COUNT VIII: HOSTILE WORK ENVIRONMENT BASED ON RACE IN VIOLATION OF 42 U.S.C. § 1981 (Enforced Through 42 U.S.C. § 1983 and Monell Liability)

129.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 56 above as though fully set forth herein.

130.  Plaintiff is a Black/African American female and, at all times material, was entitled to the protections afforded by 42 U.S.C. § 1981, including the right to work in an environment free from race-based harassment affecting the terms and conditions of employment.

131.  Defendant, acting under color of state law through its policymakers, supervisors, command staff, and employees, subjected Plaintiff to a racially hostile work environment in violation of 42 U.S.C. § 1981.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

132.    Beginning in or around 2020 and continuing throughout the relevant period, Plaintiff was subjected to severe and pervasive race-based harassment and hostility, including discriminatory and dangerous work assignments, repeated displacement from preferred posts, exclusion from workplace opportunities and communications, tolerated verbal abuse, retaliatory scrutiny following complaints, and unequal treatment compared to similarly situated non-Black employees.

133.    For example, Plaintiff was repeatedly assigned to dangerous and undesirable dormitories while similarly situated non-Black employees received accommodations and more favorable assignments. Plaintiff was also subjected to race-based segregation during mandatory workplace training, publicly undermined after complaining about discrimination, and excluded from workplace activities and opportunities routinely afforded to non-Black employees. Despite Plaintiff's repeated complaints regarding discriminatory treatment and racially hostile conditions, Defendant failed to take meaningful corrective action.

134.    The harassment described herein was unwelcome and was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create an objectively and subjectively hostile work environment.

135.    Plaintiff repeatedly complained about the hostile work environment to supervisors, Labor Relations, Internal Affairs, and the Equal Employment Opportunity Commission, thereby placing Defendant on actual and constructive notice of the discriminatory conduct.

136.    Despite receiving repeated notice of the hostile work environment, Defendant failed to take prompt or effective remedial action and instead permitted the hostile conditions to continue and escalate.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

137.    The hostile work environment described herein was undertaken pursuant to Defendant's policies, customs, practices, and/or deliberate indifference to race-based harassment within the Corrections Security Bureau and West Detention Center.

138.    Defendant, through its policymakers and command staff, maintained and permitted customs and practices that tolerated race-based harassment, unequal assignments, exclusion from opportunities, and inadequate responses to complaints of discrimination.

139.    Defendant's failure to adequately investigate, supervise, discipline, and correct the discriminatory conduct of its supervisory personnel constituted deliberate indifference to Plaintiff's federally protected rights.

140.    Defendant's policies, customs, practices, and deliberate indifference were the moving force behind the deprivation of Plaintiff's rights under 42 U.S.C. §§ 1981 and 1983.

141.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered emotional distress, humiliation, mental anguish, loss of earnings and advancement opportunities, damage to her professional reputation, and other compensatory damages.

142.    Defendant acted intentionally, maliciously, and with reckless disregard for Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a.    Enter judgment in favor of Plaintiff and against Defendant on this Count;

b.    Declare that Defendant's conduct violated Plaintiff's rights under 42 U.S.C. §§ 1981 and 1983;

c.    Enjoin Defendant from engaging in race-based harassment and hostile work environment practices and require Defendant to implement lawful anti-harassment, anti-discrimination, and complaint-investigation policies and procedures;

d.    Award Plaintiff back pay, lost overtime compensation, lost benefits, and all other lost compensation resulting from Defendant's unlawful conduct;

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

e.   Award Plaintiff front pay, equitable relief, and/or reinstatement to the position and status Plaintiff would have occupied absent Defendant's unlawful conduct;

f.   Award Plaintiff compensatory damages for emotional distress, humiliation, mental anguish, and damage to her professional reputation;

g.   Award Plaintiff attorneys' fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988;

h.   Award pre-judgment and post-judgment interest; and

i.   Grant such other and further legal and equitable relief as this Court deems just and proper.

## COUNT IX: RACE DISCRIMINATION
## (DISPARATE TREATMENT) - FCRA

143.   The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 11, and 14 through 56 above as if set out in full herein.

144.   At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 et seq., which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a).

145.   The Plaintiff is a member of the protected class of Black, African American citizens as defined in Fla. Stat. § 760.02.

146.   During the course of the Plaintiff's employment with the Defendant, the Plaintiff has been subjected to discriminatory treatment because of her race, as more fully described in paragraphs 14-56 of this Complaint, including denial of Field Training Officer training and other career-advancing opportunities, discriminatory post assignments, racially segregated training sessions, and systematic exclusion from workplace opportunities.

33

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

147.    Similarly situated employees who are not Black were not subjected to the conduct described and referred to in paragraphs 14-56 of this Complaint.

148.    The Plaintiff was and is qualified for her position and for the training and promotional opportunities she sought while working for the Defendant.

149.    The Defendant violated the Florida Civil Rights Act by discriminating against the Plaintiff because of her race in the terms, conditions, and privileges of her employment.

150.    As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

151.    Any alleged nondiscriminatory reason for this treatment of the Plaintiff by the Defendant is a mere pretext for the actual reason for discriminating against her based on her race.

152.    The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b.  Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c.  Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race;

d.  Order the Defendant to make the Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e.  Award a monetary judgment representing prejudgment interest;

f.  Award any other compensation allowed by law including attorneys' fees pursuant to Fla. Stat. § 760.11(5);

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

g.  Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h.  Grant such other and further relief as the Court deems just and proper.

## COUNT X: RACE DISCRIMINATION – (RETALIATION) FCRA

153.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 11, and 14 through 56 above as if set out in full herein.

154.    At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 et seq., which prohibits retaliation against any person who has opposed any practice which is an unlawful employment practice under the Act or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act. Fla. Stat. § 760.10(7).

155.    The Plaintiff engaged in statutorily protected activity under the Florida Civil Rights Act when she opposed discriminatory employment practices based on race and sex, as more fully described in paragraphs 14-56 of this Complaint, including filing complaints with supervisors, Labor Relations, Internal Affairs, and the Equal Employment Opportunity Commission.

156.    Following the Plaintiff's protected activities, the Defendant subjected the Plaintiff to materially adverse employment actions, as more fully described in paragraphs 14-56 of this Complaint, including public reprimand, intensified discriminatory post assignments, removal of her supportive supervisor, professional and social isolation, and manipulation of her work schedule.

157.    The temporal proximity between the Plaintiff's protected activities and the adverse actions supports a causal connection between the two.

158.    The Defendant violated the Florida Civil Rights Act by retaliating against the Plaintiff for engaging in protected activity.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

159.    As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

160.    The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b.  Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c.  Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in retaliatory employment practices;

d.  Order the Defendant to make the Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e.  Award a monetary judgment representing prejudgment interest;

f.  Award any other compensation allowed by law including attorneys' fees pursuant to Fla. Stat. § 760.11(5);

g.  Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h.  Grant such other and further relief as the Court deems just and proper.

## COUNT XI: SEX DISCRIMINATION
## (DISPARATE TREATMENT) - FCRA

161.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 11, and 14 through 56 above as if set out in full herein.

162.    At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 et seq., which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or

otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Fla. Stat. § 760.10(1)(a).

163. The Plaintiff is a member of the protected class of female citizens as defined in Fla. Stat. § 760.02.

164. During the course of the Plaintiff's employment with the Defendant, the Plaintiff has been subjected to discriminatory treatment because of her sex, as more fully described in paragraphs 14-56 of this Complaint, including gendered verbal abuse tolerated by supervisors, systematic exclusion of female deputies from workplace opportunities, denial of training and advancement opportunities, and discriminatory post assignments.

165. Similarly situated employees who are not female were not subjected to the conduct described and referred to in paragraphs 14-56 of this Complaint.

166. The Plaintiff was and is qualified for her position and for the training and promotional opportunities she sought while working for the Defendant.

167. The Defendant violated the Florida Civil Rights Act by discriminating against the Plaintiff because of her sex in the terms, conditions, and privileges of her employment.

168. As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

169. Any alleged nondiscriminatory reason for this treatment of the Plaintiff by the Defendant is a mere pretext for the actual reason for discriminating against her based on her sex.

170. The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a. Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b. Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c. Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of sex;

d. Order the Defendant to make the Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law including attorneys' fees pursuant to Fla. Stat. § 760.11(5);

g. Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h. Grant such other and further relief as the Court deems just and proper.

## COUNT XII: SEX DISCRIMINATION – (RETALIATION) - FCRA

171. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 11, and 14 through 56 above as if set out in full herein.

172. At all times material hereto, the Defendant failed to comply with the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 et seq., which prohibits retaliation against any person who has opposed any practice which is an unlawful employment practice under the Act or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act. Fla. Stat. § 760.10(7).

173. The Plaintiff engaged in statutorily protected activity under the Florida Civil Rights Act when she opposed discriminatory employment practices based on race and sex, as more fully

described in paragraphs 39-46 of this Complaint, including filing complaints with supervisors, Labor Relations, Internal Affairs, and the Equal Employment Opportunity Commission.

174.    Following the Plaintiff's protected activities, the Defendant subjected the Plaintiff to materially adverse employment actions, as more fully described in paragraphs 47-52 of this Complaint, including public reprimand, intensified discriminatory post assignments, removal of her supportive supervisor, professional and social isolation, and manipulation of her work schedule.

175.    The temporal proximity between the Plaintiff's protected activities and the adverse actions supports a causal connection between the two.

176.    The Defendant violated the Florida Civil Rights Act by retaliating against the Plaintiff for engaging in protected activity.

177.    As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

178.    The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.    Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b.    Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c.    Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in retaliatory employment practices;

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

d. Order the Defendant to make the Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e. Award a monetary judgment representing prejudgment interest;

f. Award any other compensation allowed by law including attorneys' fees pursuant to Fla. Stat. § 760.11(5);

g. Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h. Grant such other and further relief as the Court deems just and proper.

## COUNT XIII: HOSTILE WORK ENVIRONMENT BASED ON THE INTERSECTION OF RACE AND SEX- FCRA

179. The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 11, and 14 through 56 above as if set out in full herein.

180. During the course of the Plaintiff's employment with the Defendant, the Plaintiff has been subjected to a discriminatory, hostile, and offensive work environment because of her race and sex, as more fully described in paragraphs 14-56 of this Complaint.

181. The discriminatory conduct referred to in paragraphs 14-56 of this Complaint is and was offensive to the Plaintiff and would be offensive to a reasonable person in the Plaintiff's position.

182. The Plaintiff was subjected to the conduct referred to in this Complaint because she is a Black woman.

183. The harassment adversely affected the Plaintiff's psychological well-being and unreasonably interfered with her work performance.

184. The Plaintiff gave the Defendant actual notice of race-based and sex-based harassment through multiple complaints, as described in paragraphs 102-108 of this Complaint.

185. Despite the Plaintiff's complaints, the Defendant failed to take adequate remedial action, and the harassment continued.

186.    As a direct and proximate result of the Defendant's intentional conduct, the Plaintiff has suffered, is now suffering, and will continue to suffer emotional distress, humiliation, embarrassment, and economic losses.

187.    The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to Fla. Stat. § 760.10.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Declare that the acts complained of herein are in violation of the Florida Civil Rights Act;

b.  Award the Plaintiff compensatory damages for emotional distress, embarrassment and humiliation;

c.  Grant a permanent injunction enjoining the Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which creates or permits a hostile work environment based on race or sex;

d.  Order the Defendant to make the Plaintiff whole, by compensating her for lost wages, benefits, including front pay, back pay with prejudgment interest;

e.  Award a monetary judgment representing prejudgment interest;

f.  Award any other compensation allowed by law including attorneys' fees pursuant to Fla. Stat. § 760.11(5);

g.  Award the Plaintiff costs of this action, including reasonable attorneys' fees;

h.  Grant such other and further relief as the Court deems just and proper.

## COUNT X: FMLA RETALIATION

188.    The Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 56 above as if set out in full herein.

189.    The Family and Medical Leave Act provides:

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

a) It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter 29 U.S.C. § 2615(a)(2).

190. Plaintiff engaged in protected activity under the FMLA when she exercised her statutory right to take FMLA leave for a serious health condition. In March 2023, Plaintiff suffered a fractured ankle requiring medical treatment and physical therapy. Plaintiff's healthcare provider, Dr. Brian Coleman, certified that Plaintiff was incapacitated from March 24, 2023, through May 8, 2023, with continuing treatment through June 19, 2023.

191. Defendant approved Plaintiff's FMLA leave, and Plaintiff took the protected leave from March 2023 through May 2023 as medically required.

192. Following Plaintiff's exercise of her FMLA rights, Defendant subjected Plaintiff to the following adverse employment actions: denial of Field Training Officer training requests submitted in June 2024, September 2024, and October 2024; denial of Instructor Techniques training in April 2024; denial of Tactical Training in May 2024; denial of the Career 3 promotion Plaintiff would have achieved in June 2025; assignment to the most dangerous and undesirable dormitories in the facility; and systematic exclusion from career-advancing opportunities for which Plaintiff was qualified.

193. These adverse actions would dissuade a reasonable employee from exercising FMLA rights in the future.

194. On September 30, 2025, a supervisor with authority over promotions and training assignments made a direct statement to Plaintiff demonstrating retaliatory animus. The supervisor told Plaintiff: "if you actually take FMLA leave, as opposed to coming to work, thinking it will protect your job, it only protects your job but it works against you for promotions."

42
THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

195.     This statement constitutes direct evidence that Defendant retaliated against Plaintiff for exercising her FMLA rights. The supervisor's statement explicitly demonstrates that Defendant considered Plaintiff's FMLA usage as a negative factor when making decisions about her career advancement, training opportunities, and promotional prospects.

196.     The causal connection between Plaintiff's FMLA leave and the adverse employment actions is established by the temporal relationship between her FMLA leave in March through May 2023 and the subsequent denials of training and advancement opportunities beginning in 2024 and continuing through 2025. This temporal proximity, combined with the September 30, 2025 supervisor statement revealing Defendant's retaliatory motive, demonstrates that Defendant took adverse action against Plaintiff because she exercised her FMLA rights.

197.     Unlike FMLA interference, which prohibits denial of substantive FMLA rights, FMLA retaliation requires proof that the employer took adverse action because the employee exercised FMLA rights. Defendant's conduct satisfies this standard because the supervisor's September 30, 2025 statement and the pattern of denying training and advancement opportunities following Plaintiff's FMLA leave demonstrate that Defendant punished Plaintiff for taking FMLA leave.

198.     Defendant's retaliation against Plaintiff for exercising her FMLA rights was willful within the meaning of 29 U.S.C. § 2617(c)(2). The September 30, 2025 supervisor statement demonstrates that Defendant knew or showed reckless disregard for whether its conduct was prohibited by the FMLA. By explicitly telling an employee that exercising FMLA rights would harm promotional opportunities, Defendant demonstrated actual knowledge that it was violating the employee's protected rights. This willfulness supports an award of liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

199.     As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer economic damages, including loss of the Career 3 promotion she would have obtained in June 2025 had she been approved for Field Training Officer training, resulting in an annual salary loss of approximately $15,000, and loss of other training and advancement opportunities. Plaintiff has also suffered emotional distress, anxiety, and humiliation arising from Defendant's retaliatory conduct.

**WHEREFORE**, the Plaintiff requests that this Honorable Court:

a.  Award equitable relief as may be appropriate, including employment, reinstatement, and promotion;

b.  Award the Plaintiff back pay for all lost wages and benefits, including the Career 3 salary differential she would have received beginning in June 2025;

c.  Award the Plaintiff front pay or other equitable monetary relief;

d.  Award the Plaintiff liquidated damages in an amount equal to the sum of her actual damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii) based on Defendant's willful violation of the FMLA;

e.  Award the Plaintiff compensatory damages for emotional distress, anxiety, and humiliation;

f.  Award the Plaintiff reasonable attorneys' fees, expert witness fees, and costs of this action pursuant to 29 U.S.C. § 2617(a)(3);

g.  Grant such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

The Plaintiff demands trial by jury of all issues so triable as of right.

**Dated: May 6, 2026.**

Respectfully submitted,

**s/ Tanesha W. Blye**
Tanesha W. Blye, Esq. (FBN: 738158)
Email: attorneyblye@lawyerofjustice.com
Secondary Email: legalassistant@lawyerofjustice.com
THE LAW OFFICES OF T. WALLS BLYE, PLLC

44

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)

15800 Pines Blvd., Ste 321, Pembroke Pines, FL 33027
66 West Flagler St., Ste. 900, Miami, FL 33130
Main Phone: (786) 796-1814
Legal Assistant's Phone: (305) 209-5779

**Lead Counsel for Plaintiff**

THE LAW OFFICES OF T. WALLS BLYE, PLLC
(WWW.LAWYEROFJUSTICE.COM)